**UNITED STATES,**

v.

**Robert MOSS.**

**No. 3:01–00102.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 13, 2001.

William Billington Bruce, Bruce, Weathers, Corley & Lyle, Nashville, TN, for Robert Moss.

Lawrence W. Moon, Office of the United States Attorney, Nashville, TN, for United States.

### *MEMORANDUM*

WISEMAN, Senior District Judge.

Defendant Robert Moss ("Defendant" or "Moss"), charged with violating 28 U.S.C. § 841(a)(1) for manufacture, distribution, and possession with intent to distribute methamphetamine, brings this motion to suppress evidence obtained from the search of his residence on September 25, 2000. Defendant claims the search warrant was supported by evidence obtained from a search of his trash in violation of the Fourth Amendment of the United States Constitution. For the reasons set forth below, Defendant's motion to suppress is DENIED.

### 1. Facts

Goodlettsville Police Officer, Bryan Harris, received an anonymous tip alleging that Defendant was operating a methamphetamine lab in the basement of his home, and that an odor of chemicals could be smelled coming from Defendant's residence. Following discussions with his superiors at the Goodlettsville Police Department and with agents at the Drug Enforcement Agency, Officer Bryan Harris conducted five separate searches of Defendant's trash. Evidence obtained in four of the trash searches was described in the affidavit supporting the search warrant on Defendant's residence.[1] These four searches occurred on June 13, 2000, June 27, 2000, September 12, 2000, and September 15, 2000.

At the time in question, the City of Goodlettsville provided "back door trash pick-up." Under this system, city residents did not place their garbage at the curbside for collection. Instead, city sanitation workers would drive city trucks onto each resident's property, going to the rear of the house if necessary, and load the garbage onto their trucks for removal. On both June 13 and June 27, Officer Harris, dressed as a city sanitation worker, accompanied the regular city sanitation worker onto Defendant's property and assisted the city worker in loading Defendant's garbage onto the city trash truck. On both September 12 and September 15, Officer Harris observed, from a position approximately 100 yards away, the regular city sanitation worker go onto Defendant's property, collect Defendant's trash, and remove it from Defendant's property.

On the day of each of the trash searches, Officer Harris verified that the city garbage truck was completely empty prior to the collection of Defendant's garbage, and accompanied the garbage truck from Defendant's residence directly to a designat-

---

1. Only four of the trash searches were detailed in the affidavit supporting the search warrant on Defendant's residence. Officer Harris testified at the suppression hearing that the fifth trash search was inadvertently omitted from the affidavit. Officer Harris testified that the circumstances of the omitted trash search were substantially the same as the June 13 and June 27 trash searches.

ed police site once Defendant's garbage had been collected. On all four collection occasions, Defendant's trash was (1) collected from the designated collection location—in the rear of Defendant's residence near the stairs leading to the back door, (2) collected on the designated collection day—Tuesday, and (3) collected at the designated collection time—approximately 6:30 a.m. On the day of each of the trash searches, Defendant's garbage was not searched on Defendant's property. The collected garbage was taken directly to a police towing lot where it was unloaded and then searched by Officer Harris. Included in the inventory of the contents of Defendant's garbage compiled by Officer Harris were items Officer Harris, based upon his knowledge and experience, believed to be associated with the illicit manufacture of methamphetamine. On September 25, 2000, based on the information gathered from the four trash searches, a search warrant was obtained for the Moss residence.

### 2. Discussion

Defendant argues that the four searches of his trash violated his Fourth Amendment rights because the trash was located inside the curtilage of his home, out of the view of the general public, and the police were not authorized to enter his property to gain access to the trash. The Government argues that even if the court finds that Defendant's trash was within the curtilage of his residence and was not exposed to the general public, the garbage was left within the curtilage for collection and was thus abandoned.

The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const.amend. IV. In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court stated:

the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

In an oft quoted statement, Justice Harlan stated the principle behind the Fourth Amendment as follows: "there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'." *Id.* at 361, 88 S.Ct. 507 (Harlan, J., concurring). Thus, he explained, "a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited." *Id.*

■ In the context of trash searches, the question of whether it is permissible under the Fourth Amendment for the police, either directly or through prior arrangement with a trash collector, to seize and search through trash routinely set out by persons for collection is answered by the principles set forth in *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). In *Greenwood,* the Court, relying to a large extent on the concurring opinion of Justice Harlan in *Katz,* held that police do not act in violation of the Fourth Amendment when, through a prior arrangement with the regular trash collector, they obtain, open, and search through trash containers left for collection in an area readily accessible to the public. *Id.* at 40, 42, 108 S.Ct. 1625.

In *Greenwood,* police officers asked Greenwood's regular garbage collectors to give them Greenwood's garbage after they

collected it. The garbage which they collected from Greenwood was in sealed, opaque bags at the curb in front of his house, where it had been placed for collection at a fixed time. In deciding the case, the Court framed the issue as follows: "[t]he issue here is whether the Fourth Amendment prohibits the warrantless search and seizure of garbage left outside the curtilage of a home."[2] *Id.* at 37, 108 S.Ct. 1625. The Court conceded that Greenwood may have entertained some subjective expectation of privacy in the garbage in that "he did not expect that the contents of [the] garbage would become known to the police or other members of the public." *Id.* at 39, 108 S.Ct. 1625. But the Court held that any such expectation was not objectively reasonable:

> Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondent's trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage in an area particularly suited for public inspection, and in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 40–41, 108 S.Ct. 1625 (footnotes omitted) (internal quotations and citations omitted).

■ Thus, under Supreme Court precedent, a person is considered to have forfeited any reasonable expectation of privacy in his trash when he knowingly exposes the trash by making it "readily accessible" to the public. *See id.* at 40, 108 S.Ct. 1625. Moreover, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 41, 108 S.Ct. 1625 (quoting *Smith v. Maryland,* 442 U.S. 735, 743–44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

■ Under the facts of this case, Defendant lost any reasonable expectation of privacy in his garbage when he placed it in the designated location for collection and the time for collection arrived. Put simply, Defendant placed his garbage out for collection as he usually did, and it was collected, as it usually was. According to the city's customary trash collection procedures, Defendant placed his garbage outside the rear door of his residence for collection by city sanitation workers. The established collection routine was as follows: each Tuesday morning at approximately 6:30 a.m., a city sanitation worker entered onto Defendant's property, drove seventy-five feet down defendant's driveway to the rear of the residence, collected Defendant's garbage awaiting him at the base of the rear steps, and removed said garbage from Defendant's property. This is exactly what occurred on the mornings of June 13, June 27, September 12, and September 15. The only variation was the presence of Officer Harris and his assistance in loading Defendant's garbage onto the city garbage truck on June 13 and June 27. There was absolutely no varia-

---

**2.** The Court did not analyze but simply assumed the garbage left at the curbside was located outside the curtilage of the home.

tion in the garbage collection routine on September 12 nor on September 15.

While Defendant may have had a subjective privacy interest in the garbage he deposited in the rear of his home for collection by the city sanitation worker, this Court finds that society would not find it reasonable for a person to possess a legitimate expectation of privacy in trash that is left for collection when the regularly scheduled time for collection arrives. Defendant and the City of Goodlettsville had an arrangement for Defendant's trash to be collected at Defendant's residence. Defendant, pursuant to that arrangement, placed his trash in the designated place fully expecting that a third party would access the designated place for collection, take possession of the trash, and remove it from his property. The time for collection of Defendant's garbage arrived and the city collected the trash. The presence of Officer Harris on two of the four occasions does nothing to alter the plain fact that Defendant left his garbage with the expectation that it would be collected at approximately 6:30 a.m. on Tuesday morning, and that his garbage was so collected.

In sum, when the designated time for garbage collection arrives, a person loses any legitimate expectation of privacy in the items discarded in his trash. At the designated time for collection, it is expected that a third party will access the designated place for collection and take possession of the trash for removal from the resident's property, regardless of whether trash is located within the curtilage or outside of the curtilage, and without regard for whether or not the garbage is readily accessible to the general public. Society would not find it reasonable for a person to claim he has a reasonable expectation of privacy in garbage he has placed for collection when the designated time for collection arrives. That is exactly what occurred at Defendant's residence on June 13, June 27, September 12, and September 15. Defendant placed his trash in the previously designated collection location, and it was collected and removed from his property. The fact that Officer Harris assisted the city sanitation worker in loading some of Defendant's garbage onto the city truck on two occasions does not equate to an infringement upon any societal values protected by the Fourth Amendment.

### 3. Conclusion

For these reasons, the search warrant issued for Defendant's residence, based upon evidence obtained in these trash searches, was a valid search warrant. Defendant's motion to suppress is DENIED.

An appropriate order will enter.