(196 P.3d 939)
No. 99,755

STATE OF KANSAS, *Appellant*, v. LEWIS I. HOFFMAN, *Appellee*.

Opinion filed November 26, 2008.

*Victor Braden*, assistant attorney general, and *Stephen N. Six*, attorney general, for appellant.

*Roger L. Falk*, of Law Office of Roger L. Falk & Associates, P.A., of Wichita, for appellee.

Before LEBEN, P.J., BRAZIL and BUKATY, S.J.

LEBEN, J.: Seven times over a period of several months, a Greeley County sheriff's deputy climbed into a trash truck before it entered Lewis Hoffman's rural homestead. Hoffman's trash was picked up and taken to the county landfill, where two deputies sifted through it for evidence of drug activity. Based on what was found in these warrantless searches, officers obtained a search war-

rant and found substantial evidence that Hoffman had attempted to manufacture methamphetamine, among other drug-possession violations.

The district court granted Hoffman's motion to suppress the evidence against him and concluded that the officers were not justified in intruding on Hoffman's property to search his trash. The State claims on appeal that Hoffman didn't have a reasonable expectation of privacy in trash that he had left for collection by a third party. Because no significant facts are disputed, we review the district court's legal conclusion without any required deference. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

Hoffman's dumpster is not visible from any public road, and a visitor must travel a quarter mile on his driveway, a private dirt road running through a fenced pasture, before reaching the dumpster. Just to get to the driveway, you have to drive more than 2 miles east from Tribune, Kansas (population 835), on Highway 96. We agree with the district court: Hoffman did not lose all expectation of privacy with respect to the trash in his dumpster solely because he voluntarily had a third party haul that trash away.

Trash pulls, in which officers pick up someone's trash and look through it for evidence of criminal activity, have become one of many accepted investigative techniques for law enforcement. The United States Supreme Court upheld them in *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), with respect to garbage bags left at the curbside for city trash collection. Because the Fourth Amendment prohibits only unreasonable searches, the Court held that "society would not accept as reasonable [a] claim to an expectation of privacy in trash left for collection in an area accessible to the public." 486 U.S. at 41. The Court noted that "plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." 486 U.S. at 40. For items left in such an accessible place, "the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." 486 U.S. at 41.

Of course, *Greenwood* differs from Hoffman's case in a significant respect. The trash in *Greenwood* was on the curb of a city street in Laguna Beach, California, not a quarter mile from a public roadway in rural Kansas.

The Kansas Supreme Court considered a case that is factually similar to Hoffman's in *State v. Fisher*, 283 Kan. 272, 154 P.3d 455 (2007). A three-member plurality was joined by another justice in concluding that the district court properly suppressed evidence collected in a trash pull from a rural residence. The plurality opinion applied a two-part test. First, the court must determine whether the trash was located within the curtilage of the residence. By curtilage, we refer to the area around a home where intimate activities of the family occur, an area that the Fourth Amendment protects. 283 Kan. at 282. Second, if the trash is located within the curtilage, the court must determine " 'whether the person manifested a subjective expectation of privacy in the trash container and whether that expectation of privacy in the garbage is objectively reasonable.' " 283 Kan. at 290.

The first question—whether the trash was within the curtilage of Hoffman's residence—is easily answered here. The district court found that it was, and ample evidence supported that conclusion. A person traveling on the quarter-mile dirt driveway to the residence first comes over a slight ridge while approaching a tree line that hides the residence from the highway. After coming over that rise, you enter a fenced (but ungated) area where the grass is mowed and farm implements are parked. You then pass through a tree row that surrounds the house and some outbuildings. There's a circle drive by the house, and the dumpster is located about 100 feet from the back door of the home. On appeal, the State has not challenged the district court's conclusion that Hoffman's trash dumpster was within the curtilage of his home.

The second question presents more difficulty. The facts of *Fisher* are very similar to Hoffman's because a trash-filled dumpster that wasn't visible from a public roadway either at all (in Hoffman's case) or was hard to spot (in Fisher's case) was left within the curtilage of a rural home. But one important difference pinpoints the issue in this case: the defendant burned his own trash in his

dumpster in *Fisher*, but Hoffman paid to have his trash picked up and taken to the county landfill. The State argues that this distinction makes the difference in this case because "any objective or subjective expectation of privacy disappeared when the Defendant put his trash in the dumpster for collection by sanitation workers."

We find it significant that *Greenwood* was not decided based on the idea that the defendant had lost any expectation of privacy in his trash when he put it out for trash pick-up. Rather than deciding the case solely on a theory of abandonment, the Court emphasized that the expectation of privacy was lost at least in part because his trash was accessible to the public. See LaFave, Search & Seizure § 2.6(c) (4th ed. 2004); *Greenwood*, 486 U.S. at 51 ("The Court properly rejects the State's . . . theory that trash is abandoned and therefore not entitled to an expectation of privacy.") (Brennan, J., dissenting). The Seventh Circuit has noted that the *Greenwood* Court "chose not to rely on principles of abandonment . . . despite the reliance on that principle by most of the circuit courts which had considered the constitutionality of garbage searches." *United States v. Hedrick*, 922 F.2d 396, 398 (7th Cir. 1991). We conclude that the fact that Hoffman had left his trash for pick-up by a trash collector, standing alone, does not eliminate any reasonable expectation of privacy because *Greenwood* suggests that this fact alone is not determinative.

And the only difference of note between Hoffman's case and *Fisher* is that Hoffman had a third party to haul away his trash but Fisher did not. Our reading of *Fisher* also suggests that this fact standing alone does not call for a different result than the one reached in *Fisher*. The *Fisher* plurality noted that "[a]n important inquiry in applying the *Greenwood* analysis to garbage within the curtilage is whether the garbage was so readily accessible to the public that its contents were exposed to the public for Fourth Amendment purposes." 283 Kan. at 291. While the view we've noted from *Fisher* was adopted by only a plurality of three justices, it is consistent with the United States Supreme Court's opinion in *Greenwood*.

Thus, the *Fisher* plurality's conclusion seems to us equally applicable to Hoffman's case:

"Under these circumstances, we conclude rural residents in Kansas would be quite surprised to learn that highway travelers, 'children, scavengers, snoops and other members of the public' . . . would be fully justified in pawing through the contents of a resident's trash bag placed approximately 100 yards from the highway and behind a rural home." 283 Kan. at 292.

Hoffman's trash was a quarter mile from any public roadway, well over the 100 yards in *Fisher*; Hoffman's trash was certainly not accessible to the public in any meaningful or intentional way.

We acknowledge that the resolution of this case, like many Fourth Amendment cases, involves some degree of subjectivity. The Fourth Amendment prohibits only *unreasonable* searches and seizures—and what's unreasonable has some measure of subjectivity. But our analysis is guided by cases already decided by the United States Supreme Court and the Kansas Supreme Court.

Courts in some other jurisdictions have concluded that a person never has a reasonable expectation of privacy in trash left out for collection by a third party. *E.g.*, *United States v. Moss*, 175 F. Supp. 2d 1067, 1071 (M.D. Tenn. 2001); *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005). These courts have gone well beyond the holding and rationale of *Greenwood*, which emphasized the importance of public accessibility to the trash left out for collection. Given the importance of public accessibility to the rationale of both *Greenwood* and *Fisher*, we believe that those cases provide the most helpful guidance in reaching the correct result in Hoffman's case. His trash was in no way accessible to the public. Given his rural setting, we conclude that the mere fact that he allowed a third party to haul his trash away did not eliminate his reasonable expectation of privacy in that trash. The district court properly held that the trash pulls at Hoffman's dumpster violated the Fourth Amendment, and that violation requires that the evidence be suppressed because it was obtained by a warrant based on the illegal trash pulls.

The judgment of the district court is affirmed.

BUKATY, J., dissenting: I respectfully dissent from the majority's conclusion that Hoffman retained a reasonable expectation of privacy in his trash.

It appears the facts in this case make it one of first impression in this state. I agree with the majority that the issue boils down to whether a person who places his or her trash out for collection by a third party—here, county sanitation workers—no longer has a reasonable expectation of privacy in that trash based only on the fact he or she placed it for collection.

*State v. Fisher*, 283 Kan. 272, 154 P.3d 455 (2007), mentioned by the majority, does not, in my view, answer the question since the facts there are significantly distinguishable from those here. As the majority points out, the defendant in *Fisher* left his trash out in his yard a distance away from streets and highways next to a barrel in which he apparently intended to burn it. He never intended that anyone pick it up or have any access to it. He intended to dispose of it himself. His expectation of privacy in that trash was clearly reasonable.

In my view, that same expectation is lacking in this case. Hoffman was not required to participate in the trash pick-up service offered by the local government. He voluntarily did so. He regularly placed his trash in the dumpster with the expectation that it would be picked up on an established schedule, removed from his property, and disposed of by sanitation personnel. It is very likely that many people would or could have access to the trash while it was in the truck, in the landfill, at an incinerator, or wherever else it might be taken for disposal. It strikes me then, that any expectation of privacy on Hoffman's part is not objectively reasonable under these circumstances.

The majority places much significance on the fact the dumpster where Hoffman placed his trash was located approximately 1/4 mile from the public highway and not visible until one traveled some distance on the private road leading to the dumpster. It cites *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), and other cases which hold that where trash is left for collection next to the public street, the owner no longer has an objectively reasonable expectation of privacy. According to the majority, this proximity of the trash to the public right-of-way after it is left for collection is required before the owner loses his or her expectation of privacy.

Granted, Hoffman's trash was not placed near the public right-of-way and was not as accessible to the public as was the trash involved in *Greenwood*. In my view, however, this does not diminish the fact that several people would and could have access to the trash after sanitation workers removed it from Hoffman's property. Hoffman had to reasonably expect that. When Hoffman placed the trash in the dumpster for collection, he essentially was declaring that he did not want it nor did he care what happened to it. I do not read *Greenwood* and the other cases to unequivocally and clearly state that only when trash is placed near a street or otherwise accessible to the public is the owner's expectation of privacy extinguished.

I find the decision in *United States v. Moss*, 175 F. Supp. 2d 1067 (M.D. Tenn. 2001), to be persuasive. There, city residents did not have to place their trash at curbside for collection. City sanitation workers would drive city trucks onto each resident's property and even go to the back door if necessary to collect trash. In Moss' situation, trash collectors would drive approximately 75 feet down the driveway and then walk around behind the house to collect the trash. Law enforcement officers seized Moss' trash on five separate occasions in similar fashion as occurred here. In upholding the seizures, the United States District Court stated:

"While Defendant may have had a subjective privacy interest in the garbage he deposited in the rear of his home for collection by the city sanitation worker, this Court finds that society would not find it reasonable for a person to possess a legitimate expectation of privacy in trash that is left for collection when the regularly scheduled time for collection arrives. . . .

". . . At the designated time for collection, it is expected that a third party will access the designated place for collection and take possession of the trash for removal from the resident's property, regardless of whether trash is located within the curtilage or outside of the curtilage, and *without regard for whether or not the garbage is readily accessible to the general public*. Society would not find it reasonable for a person to claim he has a reasonable expectation of privacy in garbage he has placed for collection when the designated time for collection arrives. . . . The fact that [a law enforcement officer] assisted the city sanitation worker in loading some of Defendant's garbage onto the city truck on two occasions does not equate to an infringement upon any societal values protected by the Fourth Amendment." (Emphasis added.) 175 F. Supp. 2d at 1071.

I would reverse the district court's suppression of the trash search.