No. 91,631
No. 91,667

STATE OF KANSAS, *Appellee,* v. SANDRA PORTING, *Appellant.*
STATE OF KANSAS, *Appellee,* v. KIM D. ANGEL, *Appellant.*

(130 P.3d 1173)

Opinion filed March 24, 2006.

*Sam S. Kepfield,* of Hutchinson, argued the cause and was on the briefs for appellant Sandra Porting.

*Randall L. Hodgkinson,* appellate defender, argued the cause, and *Sandra Carr,* assistant appellate defender, was on the briefs for appellant Kim D. Angel.

*Keith E. Schroeder,* district attorney, argued the cause, and *Thomas R. Stanton,* assistant district attorney, and *Phill Kline,* attorney general, were with him on the briefs for appellee.

The opinion was delivered by

LUCKERT, J.: When Eugene Hanson was released from prison, he asked his parole officer to search the residence where he used to live and planned to return to clear the residence for parole. During that search, the defendants in this case were arrested for drug-related charges. They filed motions to suppress the evidence, arguing Hanson did not have actual or apparent authority to consent to the search. The trial court denied the motions to suppress and found the defendants guilty as charged. The Court of Appeals affirmed in a split decision, and this court granted the defendants' petitions for review.

## Facts

The parties stipulated to the following facts for purposes of a bench trial. On December 27, 2002, Eugene Hanson was released from the custody of the Department of Corrections after serving approximately 18 months in prison. Prior to his imprisonment, Hanson had lived with his mother for several years at a residence located at 1130 West 20th Avenue in Hutchinson. Hanson's former girlfriend, defendant Porting, also lived at the 20th Avenue residence and continued to live there while Hanson was in prison.

As a condition of his postrelease supervision, Hanson was required to reside with his mother at the 20th Avenue residence. Upon his release, but before going to the residence, Hanson asked his supervising officer, Todd Koob, to sweep the house for drugs because he knew Porting had been rumored to be using drugs at the house. Officer Ed Mora, a corrections officer with the parole

services division, agreed to accompany Hanson to the house, and Hanson gave Officer Mora permission to search the house.

Hanson and Officer Mora entered the house while Koob and a Hutchinson police officer remained outside. Officer Mora did not request any additional consent to enter the house from Hanson's mother. Once inside, Hanson went to the northeast bedroom and opened the door. Officer Mora could see two white males and one white female in the room. One of the men was defendant Angel, a parole absconder, and the female was defendant Porting. Officer Mora saw Angel throw something on the floor. After asking Porting and the other man to leave the room, Officer Mora discovered a black bag containing suspected methamphetamine and drug paraphernalia in the chair where Angel had been sitting.

Officer Mora then asked Porting whether she had anything on her. Porting indicated she had methamphetamine in her shirt pockets. Officer Mora retrieved suspected methamphetamine and drug paraphernalia from Porting's pockets. The substances recovered from the black bag and from Porting's pockets tested positive for methamphetamine.

Both defendants filed motions to suppress the evidence obtained during the search on the grounds that Hanson did not have authority to consent to the search. At the suppression hearing, Officer Mora testified that Hanson's approved parole plan required that he live at the 20th Avenue address. Officer Mora had been told "Mr. Hanson had some concerns that there was possibly some drug usage going on at the home and that there was people there living at the residence that he did not want living there any more and was afraid that when he went to the home that there may be some problems." If Officer Mora had discovered anything at the house making it inappropriate for Hanson to live there, either Mora or Hanson's parole officer could have required that he live elsewhere. During the suppression hearing, the parties also stipulated that Angel was an overnight guest in the home; thus, he had standing to contest the search.

Evidence introduced at the preliminary hearing provides a few more relevant facts. At the preliminary hearing, Officer Mora testified that when he and Hanson entered the home, Hanson's

mother was inside but Mora did not ask her for permission to come inside. Officer Mora said that Hanson simply walked into the home as if it were okay to do so. It was Officer Mora's understanding that the northeast bedroom was Hanson's bedroom. After he had hand-cuffed Angel and retrieved the drugs from Porting, Officer Mora talked to Hanson's mother about why he was there. Hanson's mother indicated she had no problem with Officer Mora's being there to look around and make sure there was nothing that would get her or her son into trouble.

The trial court denied the defendants' motions to suppress, ruling that Hanson had authority to consent to the search because he was a resident of the house based on his physical presence and intent to remain there permanently. In separate bench trials, Porting and Angel were each convicted of possession of methamphetamine and misdemeanor possession of drug paraphernalia. Their direct appeals were consolidated.

## Court of Appeals' Decision

On appeal, the defendants argued that although Hanson was a past and prospective resident of the home, he was not a resident at the time of the search and therefore lacked authority to consent to the search. A majority of the Court of Appeals panel concluded that the State proved by a preponderance of the evidence that Hanson had common authority or sufficient relationship to the residence to give a valid third-party consent to the search. *State v. Porting*, 34 Kan. App. 2d 211, 214-15, 116 P.3d 728 (2005). The majority found that, in addition to proving actual authority, the State also proved by a preponderance of the evidence that the searching officer could reasonably rely on Hanson's apparent authority to consent to the search. 34 Kan. App. 2d at 216. The majority rejected the defendants' alternative argument that even if Hanson had the authority to consent to a search of the house, he did not have authority to consent to a search of Porting's private bedroom. 34 Kan. App. 2d at 217.

Judge Greene dissented, arguing that the majority had "unduly extended the 'common authority' and 'apparent authority' rules to validate a third-party consent to search a residence by someone

who had no more than a hope or intention of resuming residence at that location after an 18-month absence." 34 Kan. App. 2d at 217. Judge Greene would have reversed. 34 Kan. App. 2d at 223.

This court granted both defendants' petitions for review.

## Analysis

On a motion to suppress evidence, the State bears the burden of proving to the district court the lawfulness of the search and seizure by a preponderance of the evidence. *State v. Garcia,* 250 Kan. 310, 318, 827 P.2d 727 (1992). On appeal of a trial court's ruling on the motion to suppress, where the material facts are not in dispute, such as in this case where the parties stipulated to the facts, the ultimate determination of suppression is a question of law over which this court has unlimited review. *State v. Ramirez,* 278 Kan. 402, 404, 100 P.3d 94 (2004).

### *Common Authority*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights generally prohibit the warrantless entry of a person's home. *Payton v. United States,* 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *State v. Mendez,* 275 Kan. 412, 420-21, 66 P.3d 811 (2003). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched [citation omitted] or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez,* 497 U.S. 177, 181, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990). *Mendez,* 275 Kan. at 420-21.

Both Porting and Angel argue that there was not a valid consent. Porting, as a resident of the premises, and Angel, as an overnight guest, had an expectation of privacy and, thus, had standing to object to the search. See *Minnesota v. Olson,* 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990).

The Court of Appeals held that the consent was a valid third-party consent. In support of this conclusion, it cites *United States v. Matlock,* 415 U.S. 164, 165-66, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), in which the United States Supreme Court held that when

the prosecution seeks to justify a warrantless search on the basis of voluntary consent of someone other than the person whose property was searched, it may show that consent was obtained from a third party who possessed common authority over or other sufficient relationship to the premises sought to be searched. The Court of Appeals in this case cited *Matlock* for authority that a search could be conducted by an individual who had common authority over the property. The *Matlock* court explained:

"The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that *the others have assumed the risk that one of their number might permit the common area to be searched.*" (Emphasis added.) 415 U.S. at 171 n.7.

See *Georgia v. Randolph*, 547 U.S. 103, 164 L. Ed. 2d 208, 126 S. Ct. 1515 (2006) (2006 WL 707380 filed March 22, 2006).

The Court of Appeals majority did not discuss the co-inhabitants' reasonable expectation or assumption of risk. Rather, the majority focused upon whether Hanson had joint access or control. The stipulated facts in this case do not establish that Porting, and likewise her overnight guest, Angel, considered Hanson "one of their number" or assumed the risk that he might permit a search. The record is silent regarding whether Porting even knew Hanson was being released or knew of his parole plan and its requirements. What the record does establish is that Hanson had been absent for 18 months and that Porting was a "former" girlfriend. There is no indication that Hanson had any relationship to Angel. As Judge Greene stated in his dissent, Hanson "had no more than a hope or intention of resuming residence at that location after an 18-month absence, knowing that there were now others living there." 34 Kan. App. 2d at 218 (Greene, J., dissenting). Under these facts, the State did not meet its burden of establishing that Porting and Angel had assumed the risk that Hanson might permit a search.

Additionally, *Matlock* limits the right to consent to situations where there is "mutual use of the property by persons generally having joint access or control for most purposes." 415 U.S. at 171

n.7. See also *United States v. Cantley*, 130 F.3d 1371, 1376-77 (10th Cir. 1997) (parole officers' warrantless search limited to common areas and areas of parolee's control).

The Court of Appeals majority in this case found *State v. Ratley*, 16 Kan. App. 2d 589, 594, 827 P.2d 78 (1992), a case which cited and applied *Matlock*, to be instructive in considering whether there was common authority. In *Ratley*, the defendant's wife left the marital home for a safe house after being physically abused by her husband. She returned to the home on several occasions to pick up personal belongings. Three days after leaving the home, she consented to a warrantless search during which police discovered marijuana. The trial court suppressed the evidence, ruling that the wife had abandoned the marital home by no longer occupying the premises jointly with her husband; thus, she did not have authority to consent to the search.

The *Ratley* court reversed, noting that while joint occupancy might be a factor to be considered, it was not the sole source of the wife's common authority over the home. Rather, it was the "unique relationship" of spouses that "gives them a common authority and sufficient relationship arising from the marital bonds affecting all aspects of their lives." 16 Kan. App. 2d at 592. The court held:

"[I]n Kansas, spousal consent to search cases should be approached on a case-by-case basis using a common authority or sufficient relationship test. As noted in the cases discussed here, factors to be considered in determining if common authority or a sufficient relationship exists for a valid consent to search are (1) the non-occupying spouse's retention of a key to the premises, (2) the non-occupying spouse's access to the property, (3) changed locks, (4) the length of time the non-occupying spouse is away from the premises, (5) whether the non-occupying spouse left personal property on the premises, and (6) the reason for the non-occupying spouse's departure." 16 Kan. App. 2d at 594.

In applying these factors, the court found that the wife had access to the home, had visited several times to retrieve property, had left because of her husband's abuse, had not been discouraged or restrained from returning, and had only been gone 3 days. Based on these facts, the court found the wife had common authority or

sufficient relationship to the property to give a valid consent to the search. 16 Kan. App. 2d at 594.

In the instant case, the Court of Appeals' majority found the evidence of common authority to be even more compelling than the evidence presented in *Ratley*. The court found the following facts persuasive:

"The defendant's wife in *Ratley* did not intend to return permanently to the marital residence but rather returned only to obtain her belongings. Hanson, on the other hand, indisputably intended not only to return to the home, but to reside permanently at the residence. In fact, he was required to reside there as a condition of his release. Moreover, Hanson had lived at the residence for several years prior to his incarceration, and his parole plan had been approved based upon his residing at the same location upon his release. Finally, upon his release, Hanson immediately returned to the residence." 34 Kan. App. 2d at 215.

The majority also found it important that "there was no evidence that Hanson voluntarily and permanently surrendered control or access to the premises. Nor was there any evidence that anyone had changed the locks or attempted to restrict Hanson's access to the premises in any way." 34 Kan. App. 2d at 215.

The Court of Appeals' reliance upon and application of *Ratley* was erroneous for several reasons. First, the marital bond which served as the basis for the common authority in *Ratley* does not arise in this case because there was no marital relationship. In fact, Porting was characterized as a "former girlfriend." There is no showing that there was actual, or even intended, joint occupancy of the house.

Second, the record is silent as to many of the *Ratley* factors. It does not indicate whether Hanson had any legal interest in the residence, how long he lived there prior to his incarceration, whether he left any personal effects at the residence, whether he had conferred with the current residents of the home about his planned return, or whether he had a key to the residence. The State had the burden to affirmatively show objective facts supporting Hanson's common authority.

Third, the majority of the Court of Appeals impermissibly shifted the burden of proof to the defendants when it relied on the lack of evidence that Hanson had permanently surrendered control of

the premises, that his access had been restricted, or that he was not welcome. It was improper to draw inferences from the lack of evidence in the record.

Under the stipulated facts, the State failed to meet its burden of establishing a valid third-party consent to search the house where Porting and Angel were staying because there was no evidence of current *joint* occupancy, no spousal relationship giving rise to common authority, and no mutual use of or access to the residence for the past 18 months. Hanson did not have common authority and could not give a valid consent to the search.

### Apparent Authority

The Court of Appeals majority ruled that the trial court's holding could also be affirmed under the apparent authority rule. 34 Kan. App. 2d at 216. Under the apparent authority rule, a consent to search is valid when the facts available to the officer would warrant a person of reasonable caution to believe that the consenting party had authority over the premises to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990). However, the apparent authority rule will save a warrantless search only where officers made a mistake of fact, not where they made a mistake of law. *United States v. Salinas-Cano*, 959 F.2d 861, 865-66 (10th Cir. 1992) (" '[T]he Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law.' [Citation omitted.] In other words, '*Rodriguez* . . . applies to situations in which an officer would have had valid consent to search *if the facts were as he reasonably believed them to be.*' ").

Officer Mora was not mistaken about the facts. He knew Hanson had just been released on parole and had not yet resumed living at the 20th Avenue residence. Rather, Officer Mora reached the erroneous legal conclusion that the facts authorized Hanson to give a valid consent. Under these circumstances, the apparent authority rule does not save the search. See *Salinas-Cano*, 959 F.2d at 865-66.

The defendants' motions to suppress should have been granted. Next, we must consider whether the error in admitting the evi-

dence was harmless. See *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). In this case, this requires little analysis since the evidence obtained pursuant to the illegal search was the only evidence against the defendants.

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed and remanded.