(233 P.3d 305)
No. 101,851

STATE OF KANSAS, *Appellant*, v. BRIAN E. KERESTESSY, *Appellee*.

Opinion filed June 25, 2010.

*Scott E. McPherson*, county attorney, and *Steve Six*, attorney general, for appellant.

*Gregory D. Bell*, of Forker, Suter & Rose, LLC, of Hutchinson, for appellee.

Before STANDRIDGE, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: The State appeals the trial court's decision granting Brian E. Kerestessy's motion to suppress. On appeal, the State contends that the trial court erred by suppressing evidence obtained in a constitutional search of Kerestessy's bus. We disagree. Accordingly, we affirm.

On February 2, 2008, Lyons Police Officer Cody Luck stopped a car driven by Kerestessy after Luck observed the driver making suspicious driving movements in an area where burglaries had occurred. Before approaching the car, Luck ran the car's license tag information through dispatch and discovered the tag belonged to a different vehicle. After Luck stopped the car, he spoke with Kerestessy outside the car. After Luck and Kerestessy discussed the car's registration, Luck asked Kerestessy if he could search the car. At the same time, Luck shined his flashlight into Kerestessy's car and saw in plain view a pipe that Luck believed was used to smoke marijuana. Luck arrested Kerestessy and searched his person. Eventually, Kerestessy's car was also searched. During these searches, officers found other items indicating drug use or manufacturing of drugs.

Because of the items found during Kerestessy's arrest and because Kerestessy had been under investigation for manufacturing methamphetamine, Kansas Highway Patrol Trooper Mike Farmer and Rice County Sheriff's Department Sergeant Cody Goforth drove to Little River, Kansas, where Kerestessy lived. In Little River, the officers met with Michelle Konen. Konen and Kerestessy

were not married, but the officers knew the couple had lived together for a few years and had children together.

The officers' version of the events is as follows: The officers asked Konen for consent to search her and Kerestessy's property. Konen asked the officers a few questions before eventually giving verbal and written consent to search. The written consent form used in this case included boxes that could be checked to indicate whether the person was giving consent to search his or her vehicle, residence, or business. On the form signed by Konen, Goforth checked the box next to "residence," but then he wrote "& outbuildings & vehicles" and circled all the words. Goforth's addition was made before Konen signed the form. The officers told Konen that they did not want to search the residence but wanted only to search the property, outbuildings, and vehicles. The officers specifically told Konen they wanted to search the bus on the property, and Konen knew the officers wanted to search it. The officers did not know in whose name the residence was deeded or who owned title to the bus, and they did not ask for this information.

After the officers obtained Konen's consent, they began their search with the bus, which was on the back part of the property and which was where the officers believed lab equipment might be contained. There was a dog on a leash tied to the entrance to the bus. The officers asked Konen if she would move the dog, and she did. Inside the bus, the officers found items used to manufacture methamphetamine. Konen was present during the search and did not ask the officers to stop searching.

Konen's version of the events of that evening was slightly different. She stated that she told the officers three times that she would not sign a consent-to-search form and that she wanted an attorney. When the officers asked to search the property, Konen was 6 months' pregnant, and she said it was obvious she was pregnant. She said the police officers told her that they did not care that she was pregnant and that if they had to come back with a warrant they would take her to jail on the charges and her children would be put in foster care. The officers told Konen that if she signed the consent form, they would not charge her based on what they found. Although she stated that she did not read the consent

form, which included an explanation of her rights, and the officers did not give her a chance to read it, Konen eventually decided to consent to the search. She drove to her home, where she met police officers and signed the consent form. Konen agreed that the police officers told her they did not want to search the residence but only wanted to search the property and outbuildings. She also stated that she watched as the police added to the form that they were searching the outbuildings and vehicles. Konen said the officers did not ask her who owned the house or any of the vehicles.

When the hearing on the motion to suppress was held, Konen had been living with Kerestessy for 10 years. The house she shared with Kerestessy was actually owned by Konen's sister. Kerestessy had acquired the school bus and other vehicles after he met Konen, but Konen did not share ownership in them.

Witnesses who were present when Konen consented to the search testified that Konen initially denied the police's request to a search. Nevertheless, the police officers told Konen that if they had to go get a warrant, they would search the residence, too, and would charge her with everything they were charging Kerestessy with. They told her she would go to jail and lose custody of her children. It was only then that Konen left with the officers to go to her house.

Kerestessy was interviewed at the jail and was eventually charged with one count each of manufacture of methamphetamine, possession of methamphetamine, possession of anhydrous ammonia in an unapproved container, felony possession of drug paraphernalia, obstruction of official duty, possession of drug paraphernalia, driving an unregistered vehicle, and no drug tax stamp.

Kerestessy moved to suppress evidence and statements, and the State filed a response to the motions. Nevertheless, the motions and response do not appear in the record on appeal. The trial court held a hearing on the motions. Kerestessy requested that the court suppress all evidence, claiming it was illegally obtained. The trial court determined that the police officer had reasonable suspicion to stop Kerestessy. The court further determined that the officer then saw drug paraphernalia in plain view during the legal stop, which, combined with all the circumstances, gave him probable

cause to arrest Kerestessy. The trial court also found that Kerestessy's statements made during interrogation were freely and voluntarily given. Therefore, the trial court denied that portion of Kerestessy's motions to suppress.

Regarding Kerestessy's motion to suppress the evidence found during the search of the property surrounding his and Konen's home based on Konen's consent, the trial court determined that although there was conflicting evidence, the State had met its burden of proof that Konen had voluntarily consented to the search. Nevertheless, the trial court determined that Konen did not have actual or apparent authority to consent to a search of the school bus. As a result, the trial court suppressed the evidence recovered from the bus.

The State filed this interlocutory appeal.

*Did the Trial Court Err in Granting Kerestessy's Motion to Suppress?*

The State argues that the trial court erred in granting Kerestessy's motion to suppress evidence obtained during the warrantless search of the bus. When considering a trial court's ruling on a motion to suppress evidence, this court reviews the factual findings underlying the trial court's suppression decision by a substantial competent evidence standard, and the ultimate legal conclusion drawn from those factual findings is reviewed de novo. This court will not reweigh the evidence. *State v. Fewell,* 286 Kan. 370, 375-76, 184 P.3d 903 (2008).

Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Fitzgerald,* 286 Kan. 1124, 1127, 192 P.3d 171 (2008). Consent is one of the exceptions to the warrant requirement. *State v. Thompson,* 284 Kan. 763, 776, 166 P.3d 1015 (2007).

In this case, the State points out that the officers were relying on Konen's consent to validate their warrantless search of the school bus. The prohibition against warrantless searches does not apply when voluntary consent has been obtained from the individual whose property was searched or from a third party who pos-

sesses common authority over the premises. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Nevertheless, the trial court determined that although Konen voluntarily consented to the search, Konen did not have common authority or apparent authority to consent to the warrantless search of the bus.

"The State has the burden of establishing the scope and voluntariness of the consent to search." *Thompson*, 284 Kan. at 776; see also *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990) (The government bears the burden of establishing the effectiveness of a third party's consent.). "These questions present issues of fact which appellate courts review to determine if substantial competent evidence supports the trial court's findings. [Citation omitted.]" *Thompson*, 284 Kan. at 776. "Substantial evidence is evidence that possesses both relevance and substance and that furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *Wilkins v. State*, 286 Kan. 971, 980, 190 P.3d 957 (2008).

*Common Authority*

The State first argues that the trial court erred in applying a common authority analysis to determine whether Konen had the authority to consent to the search of the residence, outbuildings, and vehicles. The State further contends that the trial court should have limited its analysis to whether Konen had the apparent authority to consent to the search of the school bus. A party other than a defendant may give valid consent, including "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). "Common authority" is defined as

"mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7.

Contrary to the State's argument, the trial court correctly utilized both analyses in finding whether the search of the bus was valid.

The trial court first considered whether Konen had authority to consent to the common areas she shared with Kerestessy. The court determined that Konen had authority to consent to a search of the house and garage she shared with Kerestessy. Nevertheless, the trial court determined that Konen did not have common authority over the school bus because she did not own it; she had never been in it nor did she know what was in it; it was located away from the property; and it had a guard dog on a leash outside the door to the school bus.

The State does not argue that Konen had common authority, allowing her to consent to a search of the school bus. Instead, the State argues that the trial court should have only applied the apparent authority analysis. Nevertheless, a court employs the apparent authority analysis when there is no actual authority. So the trial court did not err in first attempting to determine whether Konen had actual authority to consent to a search of the school bus, by analyzing whether she, as a nonowner of the searched property, possessed common authority over the property. See *Porting*, 281 Kan. at 324. Moreover, the State does not challenge the trial court's finding that the evidence is insufficient to establish that Konen had actual common authority to consent to a search of the school bus.

*Apparent Authority*

The State challenges the trial court's finding that Konen lacked apparent authority to consent to a search of the bus. "Under the apparent authority rule, a consent to search is valid when the facts available to the officer would warrant a person of reasonable caution to believe that the consenting party had authority over the premises to be searched." *Porting*, 281 Kan. at 328 (citing *Rodriguez*, 497 U.S. at 188-89). Whether the facts presented when the search is conducted would "warrant a man of reasonable caution" to believe the third party has common authority over the property depends upon all of the surrounding circumstances. *Rodriguez*, 497 U.S. at 188. Where the circumstances presented would cause a person of reasonable caution to question whether the third party

has mutual use of the property, "warrantless entry without further inquiry is unlawful[.]" *Rodriguez*, 497 U.S. at 188-89.

In addition, other courts have recognized an officer's duty to inquire in ambiguous situations. See *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004) ("[W]here an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent."); *United States v. Rosario*, 962 F.2d 733, 738 (7th Cir. 1992) (*Rodriguez* "suggests that in the absence of sufficient facts, officers have a duty to seek further information in order to determine whether they may reasonably infer that the inviter has the necessary authority to consent to an entry or search of the premises."); *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991) (Government's burden to prove consent "cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry.").

The State contends that Konen had apparent authority because the officers believed she had authority to consent. The apparent authority rule applies when the searching officers make a mistake of fact, not when they make a mistake of law. *Porting*, 281 Kan. at 328. The State argues that this case involved the officers' mistake of fact, as the officers believed Konen had apparent authority over the bus. The State contends that if the facts were as the officers believed them to be, the search was valid.

The State's argument is flawed. The test is not whether the officers thought Konen had the apparent authority to consent. Rather, the test is whether a person of reasonable caution, having the same facts that the officers had, would believe Konen had mutual use of the school bus or any legal interest in the school bus, which would have given rise to apparent authority to consent to a search of the bus. In other words, would the officer have had a valid consent to search if the facts were as he or she reasonably believed them to be? See *Porting*, 281 Kan. at 328 (Officer was not mistaken about the facts, but reached an erroneous legal conclusion based on the facts.).

The trial court made findings of fact that Konen did not have the apparent authority to consent to a search of the bus. Therefore, this court will review the trial court's findings to determine if they

are supported by substantial competent evidence as required by our standard of appellate review. See *Thompson*, 284 Kan. at 776.

In outlining its findings of fact that Konen did not have the apparent authority to consent to a search of the bus, the trial court stated as follows:

"The bus was away from the home, on the property and had a guard dog on [a] leash in front of the bus. The officers never made any attempt to determine who was the owner of this vehicle. Ms. Konen's testimony and the only evidence presented was she was not the owner of the vehicle, she did not know what was in the bus and had never been in there. She stated that was her husband[']s and she was not involved in being in or around the bus. The officer's testimony was they never made any effort to look and determine who owned the bus but went ahead and searched this based upon the consent to search form. The court finds Ms. Konen had no authority to consent to the search of the bus. The court finds the apparent authority does not extend that far to cover the bus, based on the facts presented."

As set forth in the trial court's factual findings, the facts available to the officers failed to establish that a person of reasonable caution would believe that Konen had authority over the premises to be searched. Moreover, the officers never made any attempt to ascertain whether Konen had "mutual use" of the school bus or whether she had any sort of legal interest in the school bus.

This is not, as the State contends, a case where the officers misunderstood the facts. The State argues that this case is similar to *Rodriguez*, where officers searched the defendant's apartment after the defendant's girlfriend told officers she lived at the apartment and used her key to unlock the door before giving officers permission to search the apartment, in which she kept her clothes and furniture. Unbeknownst to the officers, the girlfriend had moved out of the apartment weeks earlier and did not have actual authority to consent to the search. The United States Supreme Court determined that the officers could rely on their mistake of fact because if the facts were as they believed them to be, the girlfriend would have had the apparent authority to consent. 497 U.S. at 186-89.

Thus, the issue here is not whether these officers thought Konen had the apparent authority to consent, but whether a reasonable person given the information the police had in this case would

believe Konen had "mutual use" of the school bus or a legal interest in the school bus, which would give rise to apparent authority to consent to a search of the bus.

According to the State, it was reasonable to believe that Konen had the apparent authority to consent to a search of the bus because the officers knew that Konen and Kerestessy were a "couple" and that they had been a couple and had shared the premises for some length of time. Our Supreme Court has found a marital relationship is a factor to consider when determining whether a person has common authority over property. *Porting*, 281 Kan. at 327. The State also contends that the fact that the dog tethered outside the bus was a puppy and a family pet and was removed by either Konen or her friend shows it was reasonable to believe Konen had apparent authority to consent to a search of the bus. Moreover, the State maintains that the officers reasonably believed Konen had apparent authority because Konen was present and nearby during the search and did not object to the search of the bus or claim she had no authority over it.

Nevertheless, Konen was not obligated to object or to volunteer such information. See *Porting*, 281 Kan. at 327 ("The State had the burden to affirmatively show objective facts supporting [inviter's] common authority."); see also *United States v. Waller*, 426 F.3d 838, 849 (6th Cir. 2005) ("Deliberate ignorance of conclusive ownership of the suitcase does not excuse the warrantless search of the suitcase, especially when actual ownership could easily have been confirmed.").

In addition, Konen's and Kerestessy's marital-like relationship, without further inquiry, did not show that Konen had mutual use of the school bus. Although Konen's removing the dog from outside the bus might weigh in favor of her having apparent authority over the bus, the fact that the officers needed the dog to be removed before they could enter the bus could be considered evidence that Kerestessy did not want other people, including Konen, entering his bus. Moreover, the trial court considered the dog, which Konen described as a pit bull, to be a guard dog and found it weighed against Konen having apparent authority to consent to a search of the school bus.

Finally, the State challenges the trial court's reliance on the location of the bus as support for its decision that Konen did not have apparent authority to consent to a search of the bus. The State argues that the trial court erred in stating the bus was away from the property because one of the police officers testified that the bus was northeast of the residence, directly east of the garage on the north side of the property, and other officers just testified that the bus was behind the house. The State argues that this supports its argument that the bus was on the premises and under the authority of Konen, as a resident. The trial court, however, determined that the location of the bus weighed against Konen having common authority over the bus.

To support its argument, the State cites *State v. Basurto*, 15 Kan. App. 2d 264, 266, 807 P.2d 162, *aff'd* 249 Kan. 584, 821 P.2d 327 (1991), in which this court dealt with a question of whether a police officer's search of a detached shed was proper when the officer was executing a search warrant that described only the residence. This court held that the search was proper under the warrant because the shed was within the curtilage. 15 Kan. App. 2d at 269. The court also mentioned that it would be proper to search any vehicle within the curtilage of a residence described in a search warrant. 15 Kan. App. 2d at 269. The State argues, therefore, that the school bus was within the curtilage of the home, so Konen's consent was valid as to it.

Nevertheless, *Basurto* involved a search executed under a search warrant and not a claim of authority, whether actual or apparent, to consent to a search on behalf of an absent nonconsenting person with whom the property was shared. The location of the bus has a different bearing on whether it could be assumed to be property commonly shared with others residing in the home rather than on whether it was included in a search warrant obtained by probable cause. See *Matlock*, 415 U.S. at 171 n.7 (stating that common authority is not implied by property interests but rests on mutual use of the property by those who have joint access or control for most purposes, "so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number

might permit the common area to be searched"). The trial court did not err in relying on the school bus being located away from the home when considering whether Konen had apparent authority to consent to its search. Upon the facts presented, there is substantial competent evidence to support the trial court's finding that Konen did not have the apparent authority to consent to a search of the school bus.

In applying the previously mentioned legal principles to the present case, we determine that the circumstances surrounding the search of the bus failed to show that the school bus was subject to "mutual use" by Konen. Although an officer could have reasonably believed that Konen showed some level of control over the school bus, common authority rests "on mutual use of property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7. Here, the officers did not ask any questions to determine whether Konen had "mutual use" of the school bus or whether she had any legal interest in the school bus. As a result, the officers' warrantless entry into the school bus without further inquiry was unlawful under the Fourth Amendment to the United States Constitution. Accordingly, the trial court properly suppressed the evidence obtained from the school bus.

Affirmed.