IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,361

STATE OF KANSAS,
*Appellee*,

v.

ROBIN BOGGESS,
*Appellant.*

SYLLABUS BY THE COURT

1.

An officer's reasonable reliance on a consenting party's apparent authority may justify a warrantless search if the facts available at the time consent is obtained would warrant a person of reasonable caution to believe the consenting party had authority over the premises or property searched.

2.

Explicit assertions by consenting parties that they have common authority over the property do not give rise to apparent authority when the circumstances would cause a reasonable person to doubt its truth and not act on it without further inquiry.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 18, 2016. Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed August 24, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Joseph M. Penney*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Kimberly Motley allowed law enforcement officers to search a car she was driving. Robin Boggess was sitting in the front-passenger seat. On the passenger floorboard among clutter was a small, nondescript, black zipper bag. Inside, officers found methamphetamine, marijuana, and drug paraphernalia. They later learned the zipper bag belonged to Boggess.

The State charged Boggess with possession of methamphetamine, marijuana, and drug paraphernalia. Boggess asked the district court to suppress the evidence, claiming Motley had neither actual nor apparent authority to consent to a search of Boggess' belongings. But the State argued the officers reasonably believed Motley could consent to the search of the zipper bag. Following a hearing, the district court denied Boggess' motion and found her guilty on all counts. The Court of Appeals affirmed, and we granted review.

The question in this appeal is whether the facts available to the officers when Motley consented were sufficient to warrant a person of reasonable caution to believe Motley had authority over the passenger floorboard and the zipper bag. We conclude they were and affirm the district court's denial of Boggess' motion to suppress.

FACTUAL AND PROCEDURAL BACKGROUND

Shortly before 8 p.m. on March 10, 2013, El Dorado police officers were dispatched to an address "for a possible disturbance that was getting ready to occur." Officer Christopher Jones arrived before other officers and waited at a location near the

address. While waiting, Officer Jones saw a white Chrysler PT Cruiser pull up to the home.

When backup arrived, the officers approached the home. The Chrysler PT Cruiser was in the driveway, and two women were sitting in the front. Lieutenant Travis Pierce and Officer Jones approached the vehicle, while another officer spoke with the residents. Lieutenant Pierce, who approached the passenger side, noticed the passenger was "[t]witchy, jumpy. Unable to sit still." Similarly, Officer Jones observed the passenger was "being real fidgety, moving around a lot. Just kind of moving around as if there was no means to her motions." Based on his training and experience, Lieutenant Pierce thought the passenger was exhibiting signs of being under the influence of methamphetamine.

The officers identified Motley as the driver and Boggess as the passenger. They also discovered there was a child in the backseat. At this point, the officers did not know why they had been called to the address, so they began an inquiry. The residents eventually said that Motley and Boggess were there to collect a debt, and the residents were afraid there was going to be trouble. Lieutenant Pierce came to believe the debt was drug-related, though he never explained how he discerned this.

After surmising a crime had not been committed, Lieutenant Pierce returned Motley's and Boggess' identification cards and said they were free to leave. He claimed that Motley acknowledged they were free to leave, he turned away, and then "turned back to [Motley] and . . . asked [her] if she had a moment to speak with [him]." She agreed, and Lieutenant Pierce asked Motley to step out of the vehicle. Once outside, he asked Motley for her consent to search the vehicle, and she said yes.

3

At the time he asked for her consent, Lieutenant Pierce and Motley were "near the rear bumper area" of the vehicle. Lieutenant Pierce could not recall if the car door was open, but the vehicle's windows were down. He claimed to have "spoke[n] loud enough that [Boggess] could hear" his request for consent from Motley.

Boggess was then asked to exit the vehicle. Although it was customary to do so, Lieutenant Pierce could not recall if Boggess was told they were going to search the car. He remembered telling Officer Jones that Motley had consented to a search of the vehicle. And Officer Jones believed Boggess "was right there next to the vehicle area" when he was told of Motley's consent.

Boggess took nothing with her when she left the vehicle. She neither claimed ownership of anything in the car, nor did she object to the search. While officers searched the vehicle, Boggess stood next to Officer Michael Moore about 5 feet behind the back bumper on the passenger side. From his vantage point, Officer Moore testified he could see the officers searching the vehicle.

Officer Jones searched the passenger side of the vehicle, and Lieutenant Pierce searched the driver's side and backseat. Lieutenant Pierce described the car as "very cluttered" with things like trash, fast food items, and several children's toys strewn throughout the vehicle. Similarly, Officer Jones said the interior was "fairly messy" and it looked "somewhat lived in."

On the floorboard next to the console was a 3- to 4-inch rectangular "black zipper type bag." It was resting on a boot and surrounded by a drink, some papers, food, lottery cards, and several other miscellaneous items. Nothing on the bag revealed who owned it. Also on the floorboard was an open purse. A small, tan, satchel-like bag was on the passenger seat.

4

Officer Jones first searched the zipper bag. It contained several plastic baggies of methamphetamine, a glass pipe containing a burnt residue, rolling papers, and a breath mints canister with marijuana in it. Next, Officer Jones searched the purse, which contained a black and white polka dot bag. That bag contained another glass pipe with a burnt botanical substance and a baggy of marijuana.

After Officer Jones searched the polka dot bag, he placed it on the roof of the vehicle. At this point, Boggess told Officer Moore that she did not authorize a search of that bag. Officer Moore approached Officer Jones and said Boggess did not want her purse searched. But Officer Jones responded that he had already found contraband in the zipper bag, so he continued his search, believing he had probable cause to do so.

During the hearing on Boggess' motion to suppress, defense counsel pressed Lieutenant Pierce and Officer Jones about whether they could discern who owned the bags. Lieutenant Pierce claimed he did not know they belonged to Boggess. And he refused to agree with defense counsel that it was probable they belonged to Boggess, "[d]ue to the overwhelming[] amount of items in the vehicle." Officer Jones acknowledged that he "made a . . . pretty good, fair judgement, [*sic*] that the purse" belonged to Boggess. But as for the zipper bag, he maintained he "had no idea" it belonged to Boggess. According to Officer Jones:  "[A]s messy as the vehicle was, I didn't know whose was whose."

The State charged Boggess with possession of methamphetamine; possession of marijuana; and possession of drug paraphernalia. Before trial, Boggess moved to suppress the evidence, arguing Motley's general consent to search the vehicle did not extend to her bags. Boggess also argued Motley lacked apparent authority to consent to the search of her bags because ownership of the zipper bag where contraband was first found was, at best, ambiguous. Consequently, she argued the officers had to inquire

5

further about who owned the zipper bag before searching it. To the contrary, the State argued the search of the zipper bag "was reasonable and . . . within the apparent scope of the consent search."

After an evidentiary hearing, the district court denied Boggess' motion. It found "[t]he officers in this case could have reasonably believed that the black bag . . . belonged to the driver of the car, who did give consent. The driver had apparent authority to consent to the search, although she lacked actual authority." Afterwards, Boggess waived her right to a jury trial, and the case proceeded to a bench trial on stipulated facts. The court found her guilty as charged. It sentenced Boggess to 12 months' probation with court services and imposed an underlying 11-month prison sentence for the possession of methamphetamine count. Boggess received concurrent 12-month jail sentences for the remaining counts. The Court of Appeals affirmed Boggess' convictions, agreeing that Motley had apparent authority to consent to the search. *State v. Boggess*, No. 111,361, 2016 WL 6823379, at *11 (Kan. App. 2016) (unpublished opinion).

We granted Boggess' petition for review. Our jurisdiction is proper. See K.S.A. 60-2101(b) ("[A]ny decision of the court of appeals shall be subject to review by the supreme court[.]").

ANALYSIS

*Motley had apparent authority to consent to the search of the zipper bag.*

Boggess argues the district court should have suppressed the evidence found in the search of the vehicle because it was unreasonable for the officers to believe Motley's consent extended to the search of the zipper bag. That is, Boggess argues Motley lacked

apparent authority to consent. We disagree. When Motley gave her consent, it was objectively reasonable for the officers to believe Motley had authority over the zipper bag.

Appellate review of a motion to suppress evidence is bifurcated:  The factual underpinnings of the decision are reviewed for substantial competent evidence while the ultimate legal conclusion drawn from those facts is reviewed de novo. *State v. Brown*, 306 Kan. 1145, 1151, 401 P.3d 611 (2017). Substantial competent evidence is evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). We do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides the same protections. *State v. Ryce*, 303 Kan. 899, 909, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017); see *State v. Zwickl*, 306 Kan. 286, 291, 393 P.3d 621 (2017) (stating this court could extend Section 15's protections beyond the federal guarantees provided by the Fourth Amendment but has not yet done so).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

"This 'warrant requirement' espouses a marked preference for searches authorized by detached and neutral magistrates to ensure that searches 'are not the random or arbitrary acts of government agents,' but rather intrusions 'authorized by law' and 'narrowly limited' in objective and scope. [Citation omitted.] Consequently, 'police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure.' *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)." *Ryce*, 303 Kan. at 913.

Even so, "the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989); see *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'").

Consent is a well-established exception to the warrant requirement. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Nece*, 303 Kan. 888, 892, 367 P.3d 1260 (2016), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017). "Consent may be obtained from the individual whose property is searched, or in certain instances, from a third party who possesses either actual authority or apparent authority to consent to the search." *United States v. Cos*, 498 F.3d 1115, 1124 (10th Cir. 2007).

Here, there is no question Motley lacked actual authority to consent to search Boggess' zipper bag. Instead, the State contends, as the driver of the vehicle, Motley possessed apparent authority to consent. The State must prove the search and seizure were lawful, which means in this instance that it carries the burden of establishing the

8

scope and voluntariness of the consent to search. See K.S.A. 22-3216; *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009).

In *United States v. Matlock*, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), the United States Supreme Court held third-party consent is valid against an absent, nonconsenting person when the third party "possesses common authority over premises or effects" shared with the nonconsenting party. In reaching this holding, the Court explained that common authority is not derived from the

> "mere property interest a third party has in the property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 U.S. at 171 n.7.

See *Georgia v. Randolph*, 547 U.S. 103, 122-23, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006) (holding that officers may not lawfully search a house if one resident consents but another resident who is present refuses consent).

In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990), the Court expanded upon *Matlock* and held that a warrantless search may be upheld on an officer's reasonable reliance on the consenting party's apparent authority. More specifically, the Court stated a search can be reasonable under the Fourth Amendment if "'the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises." 497 U.S. at 188. In reaching this conclusion, the Court emphasized that "[w]hether the basis for [apparent] authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." 497 U.S. at 186. Yet the Court cautioned that even when the consenting parties make an "explicit assertion" that they have common

authority over the property, "the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." 497 U.S. at 188. If so, "then warrantless entry without further inquiry is unlawful unless authority actually exists." 497 U.S. at 188-89.

Federal circuit courts interpreting *Rodriguez* have stated that when an officer faces "ambiguous facts" or an "ambiguous situation" about an individual's authority to consent, the officer must investigate further before conducting a search. See *United States v. Peyton*, 745 F.3d 546, 554 (D.C. Cir. 2014); *United States v. Waller*, 426 F.3d 838, 846-47 (6th Cir. 2005); *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004); *Montville v. Lewis*, 87 F.3d 900, 904 (7th Cir. 1996); *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991). As one commentator put it, "sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'" 4 LaFave, Search and Seizure § 8.3(g), p. 243 (5th ed. 2012); see *State v. Kerestessy*, 44 Kan. App. 2d 127, 135, 138, 233 P.3d 305 (2010) (finding no apparent authority where the consenting girlfriend told officers "'she was not involved in being in or around the bus'" searched).

Additionally, courts, including ours, have observed that apparent authority is limited to situations in which officers make a mistake of fact, not a mistake of law. *State v. Porting*, 281 Kan. 320, 328, 130 P.3d 1173 (2006); see *People v. Stock*, 397 P.3d 386, 395 (Colo. 2017). "In other words, the rule applies to situations in which an officer would have had valid consent to search if the facts were as the officer reasonably believed them to be." *Porting*, 281 Kan. 320, Syl. ¶ 5.

Various judicial references to "ambiguity" in apparent authority cases connote factual uncertainty, not the mere existence of more than one plausible interpretation of the facts. See *Ryce*, 303 Kan. at 965-66 ("Statutory ambiguity has been described in a myriad of ways, but fundamentally, a 'statute is ambiguous when two or more

10

interpretations can fairly be made.'"). Since apparent authority always results from a mistake of fact by officers, it would be easy for a court in hindsight to uncover some ambiguity on review. But the operative question before us must always be whether "'the facts available to the officer *at the moment* . . . "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises?" (Emphasis added.) *Rodriguez*, 497 U.S. at 188. So "[o]nce officers reasonably believe that an individual has the authority to consent, we do not require them to keep investigating merely because one can imagine some way that additional facts might alter their analysis." *United States v. Romero*, 749 F.3d 900, 907 (10th Cir. 2014). Reasonableness is the "'ultimate touchstone of the Fourth Amendment.'" *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014).

Under these facts, we conclude it was reasonable for the officers to believe Motley had the authority to consent to a search of the nondescript zipper bag. Several legal principles inform our decision. The first of which is that "the driver of a vehicle has some amount of joint access to the vehicle, and, in fact, the driver has immediate control over the vehicle." *United States v. Dunkley*, 911 F.2d 522, 526 (11th Cir. 1990); see *Ziegler v. Martin County School District*, 831 F.3d 1309, 1322 (11th Cir. 2016); *United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993); *United States v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988).

More specifically, the zipper bag was situated on the front passenger floorboard next to the console—an area Motley could easily access. Indeed, the front passenger floorboard is a location often used by drivers to store objects while they are driving. Judge Janette Satterfield made the same observation in this case:

> "I put my purse on the passenger floorboard all the time, because I can't have it on my floorboard, because I'm driving. . . . And if it's in the person's way of their feet, I might put it in the back passenger—on the floorboard."

11

Consider *United States v. Barber*, 777 F.3d 1303 (11th Cir. 2015), a case in which the Eleventh Circuit Court of Appeals addressed a similar factual scenario. Following a traffic stop, officers learned the driver had a suspended license. They arrested the driver, who then consented to a search of the car. Barber, who was seated in the passenger seat, was asked to exit the vehicle. On the passenger-side floorboard was a purple bag, which contained a handgun, Barber's business cards, and a photo of Barber and his children. When officers learned Barber was a convicted felon, they arrested him.

Barber sought to suppress the evidence, arguing the officers searched his bag without consent. The federal district court upheld the search, finding the driver's general consent included the consent to search containers within the car and the officers had no reason to suspect the bag belonged to only Barber. The Court of Appeals upheld the district court's decision, reasoning:

> "The bag's placement on the passenger-side floorboard, within easy reach of [the driver], coupled with Barber's silence during the search, made it reasonable to believe [the driver] had common authority over the bag. Drivers do not ordinarily place their bags on the driver-side floorboard, but drivers sometimes use the passenger-side floorboard to store their belongings. The officers could have reasonably believed [the driver] had common authority over the bag." 777 F.3d at 1305-06.

This rationale leads us to our next point. Other courts have also found it meaningful when a third party consents to a search and the defendant—who is aware of the consent—remains silent. See *United States v. Langston*, 970 F.2d 692, 698 (10th Cir. 1992) ("By remaining silent while the driver consented to, and assisted in, the search, [the passenger] did not give the officer any reason to believe that he had an interest in the items in the trunk."); *Lemley v. State*, 375 P.3d 760, 765 (Wyo. 2016) ("[A]n officer acts reasonably in relying on the apparent authority of the consenting person, if a second person who could be expected to object and correct any misperception as to authority to

authorize a search is present when consent is requested and he remains silent."); see also *United States v. Carrasco*, 540 F.3d 43, 49 (1st Cir. 2008) (holding marine enforcement officers acted reasonably in searching containers on boat where owner consented to search and defendant did not object to search of containers that officers later learned were entrusted to him); *United States v. Navarro*, 169 F.3d 228, 232 (5th Cir. 1999) (stating it was significant that the passenger did not object when the driver gave general consent to search the vehicle); *State v. Pedraza*, No. 95,016, 2007 WL 1747870, at *6 (Kan. App. 2007) (unpublished opinion) ("The fact that Pedraza failed to object to the search supports our conclusion that it was reasonable for the deputy to believe that the driver's consent to search the vehicle included the bag.").

Naturally, though, when a passenger is unaware of the driver's consent, the passenger's silence is much less meaningful. See *United States v. Iraheta*, 764 F.3d 455, 465 (5th Cir. 2014) ("Although Defendants did not object to the search nor claim ownership of the luggage searched, we conclude that that is not decisive under these facts. It is undisputed that both [passengers] did not hear [the driver] give consent to the search nor were they ever informed of [the driver's] consent by the officers."); see also *United States v. Jaras*, 86 F.3d 383, 390 (5th Cir. 1996) ("Under the circumstances of the present case, [the passenger's] consent to a search of the suitcases cannot be inferred from [the passenger's] silence and failure to object because the police officer did not expressly or implicitly request [the passenger's] consent prior to the search."). But such is not the case here.

There is substantial competent evidence that Boggess was aware the officers were going to search the vehicle. Despite her awareness, Boggess neither claimed ownership in any of the items in the vehicle, nor did she take anything with her when she exited the vehicle. Boggess objected only to the search of her polka dot bag removed from her purse after the search of the small zipper bag. This is not to say Boggess had to object in order

13

to make the officer's reliance on the driver's apparent authority unreasonable. But Boggess' silence does make the officer's reliance on Motley's consent more reasonable.

Next, the type of container searched is important. See *State v. Harding*, 282 P.3d 31, 38 (Utah 2011) (emphasizing that "[t]he type of container searched is often significant"). The contraband was in a small zipper bag that gave no indication of ownership. Nothing about the bag would signal to a reasonable person that Motley did not exercise common authority over it. See *State v. Sawyer*, 147 N.H. 191, 196, 784 A.2d 1208 (2001) (upholding the search of black nylon cassette bag resting behind driver's seat because it was the type of bag that could reasonably be believed to belong to the driver and the defendant did not object to the search of the bag); see also *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991) ("We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.").

On the other hand, had the officers searched the purse on the passenger floorboard, the outcome in the case might be different. See *State v. Boyd*, 275 Kan. 271, 277, 283, 64 P.3d 419 (2003) (explaining the inherently personal nature of a purse); *People v. James*, 163 Ill. 2d 302, 318, 645 N.E.2d 195 (1994) ("In our view, it would have been objectively reasonable for the law enforcement officer to realize that the purse might belong to one of the passengers rather than to [the driver]. A purse is normally carried by a woman, and all of the adult occupants of the vehicle were women. Thus, the purse could logically have belonged to any one of the three adult women in the car."). But Jones first found contraband in the zipper bag.

Lastly, the officers described the vehicle as cluttered, and Jones thought it looked "somewhat lived in." It is not common for passengers to fill the driver's car with clutter.

14

Hence the presence of clutter suggests the driver either placed the clutter there or sanctioned its presence in the vehicle. The zipper bag was found among several miscellaneous items next to the console. Like the items that surrounded the zipper bag, a reasonable officer could conclude that Motley exercised control over the bag much like she did over the surrounding items.

We agree with the lower courts that Motley had apparent authority to consent to a search of the zipper bag. In the end, we hold substantial competent evidence supports the district court's findings and affirm the denial of Boggess' motion to suppress. Boggess' convictions are affirmed.

Affirmed.

\* \* \*

LUCKERT, J., dissenting: I disagree with the majority's conclusion that law enforcement officers' reliance on Kimberly Motley's consent to search bags located at the feet of the passenger, Robin Boggess, was objectively reasonable.

As the majority notes, the State shoulders the burden to establish the reasonableness of the search. See K.S.A. 22-3216(2); *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). The officers testified they thought Boggess might be under the influence of methamphetamine, but the State does not argue this suspicion justified a search. In fact, as the majority notes, the officers apparently determined there was no crime being committed as they told the driver she was free to leave. The State relies solely on its theory that Motley had the apparent authority to consent to a search of the bags located at the feet of the passenger. To meet the State's burden of persuasion under this theory, it must establish that "the facts available to the officer would warrant a person of reasonable caution to believe that the consenting party had authority over the premises

15

to be searched." *State v. Porting*, 281 Kan. 320, 328, 130 P.3d 1173 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 111 L. Ed. 2d 148 [1990]). The State did not satisfy that burden because the facts "cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'" 4 LaFave, Search and Seizure § 8.3(g), p. 243 (5th ed. 2012). Yet, here, the officers chose ignorance and proceeded with an illegal search.

I do not dispute that Motley had apparent authority to consent to a search of the car, including the passenger floorboard, and even containers contained in areas of the car as long as there was not a question of her authority to consent to opening a container. But once officers located a zippered bag found in an area where the passenger had been sitting, a person of reasonable caution would consider the possibility the passenger had authority over the bag and would question whether the driver had the apparent authority to consent to a search of the bag. This principle flows logically from the way a passenger and driver share the space. Yes, as the majority discusses, a driver might place bags on the passenger floorboard, but so might the passenger. Thus, a reasonable person of caution would wonder whether the bag belonged to the driver or the passenger. For this reason, I disagree with the decision in *United States v. Barber*, 777 F.3d 1303 (11th Cir. 2015), the case relied upon by the majority. That court concluded a driver could consent to the search of a bag on the passenger-side floorboard because the driver and the passenger had "common authority over the bag." 777 F.3d at 1305-06.

Common authority does not "automatically extend to the interiors of every enclosed space within the area," however. *Donovan v. A.A. Beiro Const. Co*., 746 F.2d 894, 902 (D.C. Cir. 1984); *United States v. Buettner-Janusch*, 646 F.2d 759 (2d Cir.), *cert. denied* 454 U.S. 830 (1981); accord *United States v. Block*, 590 F.2d 535 (4th Cir. 1978). Rather, a rule of reason applies that requires officers (and, later, courts) to "'assess[es] the critical circumstances indicating the presence or absence of a discrete expectation of privacy with respect to the particular object:  whether it is secured,

16

whether it is commonly used for preserving privacy, etc.'" *Donovan*, 746 F.2d at 902 (quoting *Block*, 590 F. 2d at 541 n.8).

*Donovan* addresses the search of a residence. Obviously, we have a different situation, and "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars." *Wyoming v. Houghton*, 526 U.S. 295, 296, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999). But the same rules of reason apply to residential and vehicle searches conducted under the consent exception to the warrant requirement when courts assess apparent authority. As the United States Supreme Court has stated: "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991). This means a driver's consent to search a vehicle must reasonably be understood to extend to a particular container. 500 U.S. at 251-52. While specific consent is not required before searching every container in a vehicle, the Court explained that circumstances may require the consent be specific to a container in some circumstances. For example, "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." 500 U.S. at 251-52.

As this illustrates, the expectation of a passenger's privacy may vary container-to-container. Consistent with this principle, this and other courts have recognized that passengers maintain a discrete privacy interest in purses, briefcases, luggage, and other bags of a nature to carry personal belongings or otherwise evidence an expectation of privacy, even when located in a vehicle. See, e.g., *United States v. Iraheta*, 764 F.3d 455, 463-64 (5th Cir. 2014) (officers acted unreasonably in searching luggage in a trunk based on a driver's consent when there were two passengers and three suitcases—one per car occupant); *United States v. Infante-Ruiz*, 13 F.3d 498 (1st Cir. 1994) (driver's consent to

search of car did not extend to passenger's briefcase); *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (recognizing expectation of privacy in briefcase); *United States v. MacCready*, 878 F. Supp. 976 (W.D. Tex.1995) (recognizing expectation of privacy in a backpack); *State v. Boyd*, 275 Kan. 271, 277, 283, 64 P.3d 419 (2003) (explaining the inherently personal nature of a purse); *People v. James*, 163 Ill. 2d 302, 318, 645 N.E.2d 195 (1994) (same); *State v. Caniglia*, 1 Neb. App. 730, 510 N.W.2d 372 (1993) (male driver's consent to search of vehicle did not extend to female passenger's make-up "purse"); *State v. Williams*, 48 Or. App. 293, 616 P.2d 1178 (1980) (consent by owner for search of vehicle did not validate warrantless search of cassette tape case owned by passenger); *May v. State*, 582 S.W.2d 848 (Tex. Crim. App. 1979) (expectation of privacy in a lunch box).

Two concepts drive the analysis in the cases where a court determines a driver did not have apparent authority. First, individuals have a reasonable and discrete expectation of privacy in those bags, briefcases, and purses that serve as an "extension of one's own clothing because it serves as a larger 'pocket,'" in which personal items are stored. E.g., *Freire*, 710 F.2d at 1519. Second, these items are "generally not an object for which two or more persons share common use or authority." *James*, 163 Ill. 2d at 318. Both these concepts weigh toward the determination that the officer should have paused and asked questions to clarify the ambiguity regarding ownership when he discovered a zippered bag located below where the Boggess had been sitting.

The majority dismisses Boggess' expectation of privacy, in part, because the bag here was described as a small, zippered bag, as opposed to a purse. I reject that view. One often uses such a bag to store personal items and doing so in a zippered bag suggests an effort to protect one's privacy and the security of the items in the bag. That description signals a circumstance where a passenger would expect the driver to respect the personal sanctity of the passenger and not expect the driver to invade the bag any more than the passenger would expect the driver to search the passenger's pockets. In other words, a

18

discrete expectation of privacy attaches and small, zippered bags are not generally an object that two or more individuals commonly use or over which they share common authority. I find no basis to distinguish this bag from the purse at issue in this court's decision in *Boyd* or the makeup "purse" or bag at issue in the Nebraska court's decision in *Caniglia*.

I, also, reject the majority's reliance on Boggess' silence. I recognize that silence may in some cases be a factor weighing on the reasonableness of an officer's belief that a consenting party had apparent authority because the third party does not object. See *United States v. Langston*, 970 F.2d 692, 698 (10th Cir. 1992). But I disagree with applying that concept here for two reasons. First, while there was evidence in the record from which a fact-finder could conclude Boggess overheard the officers communicating to each other that *Motley* had consented to a search of the car, the district court did not make any factual findings on this point. Second, there is reason to question whether she knew about the consent or its scope. One officer admitted it was possible Boggess had not heard. And, as soon as she became aware the officers had her black bag, she objected. Appellate courts do not weigh evidence, resolve evidentiary conflicts, or determine the credibility of witnesses. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). I would draw no conclusions from Boggess' silence.

Here, the officers were presented with a situation that cried out for a question. Who owns this black, zippered bag? This simple step would have protected Boggess' rights under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights. I would reverse the judgment of the Court of Appeals affirming the district court, reverse the judgment of the district court, and remand for a new trial.

BEIER AND JOHNSON, JJ., join the foregoing dissenting opinion.